IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **OLUGBENGA ADEYEMI,** § | |
| Plaintiff, § | |
| vs. § | |
| **BRENDA CHANEY** § | CIVIL ACTION NO. _____ |
| In her Individual and Official Capacities, § | |
| **TODD HARRIS** § | |
| In his Individual and Official Capacities § | |
| **MARY PRATER** § | |
| In her Individual and Official Capacities. | |
| **TEXAS DEPARTMENT OF CRIMINAL JUSTICE** | |
| **Defendants** | |

### PLAINTIFF, OLUGBENGA ADEYEMI'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW** Olugbenga Adeyemi, for his complaint against Defendants Brenda Chaney, Todd Harris, Mary Prater and Texas Department of Criminal Justice, ("TDCJ") and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.  Plaintiff Olugbenga Adeyemi is a citizen of the United States and the State of Texas and resides in Harris County, Texas.

2.  Defendants Brenda Chaney, Todd Harris, Mary Prater are individuals, and can be served with notice and citation at their place of employment, TDCJ, Darrington Unit at 59 Darrington Road, Rosharon, Texas 77583, TDCJ is organized under the laws of the State of Texas, and service of process on the Defendant may be effected pursuant to article 2.11(A) of the Texas Business Corporation Act, or its successor statute, sections 5.201 and 5.255 of the Texas Business Organizations

1

Code, by serving Brad Livingston, its Executive Director at 861 B, IH45 North Huntsville Texas 77320

## JURISDICTION

3. The action arises under 28 USCA §1343, 42 USCA §1981, 42 USCA §1983. This Court has original jurisdiction pursuant to 28 USC §§ 1331 and 1343 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over plaintiff's cause of action arising under Texas law pursuant to 28 U.S.C. § 1367.

## NATURE OF ACTION

4. This is an action for monetary damages, declaratory and injunctive relief brought pursuant to 42 U.S.C. Section 1981 et. seq., and Thirteenth Amendment to address discrimination against identifiable classes of persons who are subjected to intentional discrimination on the basis of their ancestry, ethnic characteristics and/or physiognomical distinctive subgrouping of *homo sapiens.*

5. The prohibition of slavery contained in the Thirteenth Amendment extends not only to slavery per se, but also to the "badges and incidents' of slavery. (District of Columbia v. Carter, 409 U.S.418, 93 S.Ct. 602, 34 L.Ed. 2d613 (1973), reh'g denied, 410 U.S. 959, 93 S.Ct. 1411, 35 L.Ed. 694 (1973) and on remand to, 489 F. 2d 1272 (D.C. Cir. 1974).

6 An action is brought for violation of plaintiff's rights under 42 U.S.C.A. § 1983, providing protection against persons who misuse the power they possess under State law, made possible because they were clothed with authority of the State. This

Code basically seeks to deter state actors from using their badge of their authority to deprive individuals of their federally guaranteed rights and to provide related relief. (*Richardson v. MKnight,* 521 U.S. 399, 117 S.Ct. 2100, 138 l.Ed. 2d 540, 70 Empl. Prac. Dec. (CCH) 44784 (1997).

7. In essence, plaintiff is asserting in this litigation that defendants used their badge of authority to inflict badge of slavery on him, in violation of his Constitutional rights, especially as enumerated in § 2 of the Thirteenth Amendment which states in part: "Congress shall have power to enforce this article by appropriate legislation."

8. Congress did exercise this power when it enacted the Civil Rights Act of 1866 which stated:

"Right to make and enforce contracts, to sue, be parties, and give evidence, to inherit, purchase, lease, sell, hold, convey real and personal property and to full and equal benefit of all laws and proceeding for the security of persons as is enjoyed by white citizens and shall be subject to like punishment, pains and penalties, and to none others any law, statute, ordinance, regulation, or custom, to the contrary notwithstanding."

9. Plaintiff hereby alleges that he has been derived of his constitutional right to contract, to wit, his employment relationship with the Texas Department of Criminal Justice which was severed by defendants on a false claim based on a fraudulent and deceptive claim of use of force against an inmate.

## FACTS

10. On or about June 14, 2008. Plaintiff was assigned to searchers' desk after inmates had had their dinner. Shortly thereafter, Lieutenant Anthony, his superior,

instructed him to escort Offender Henry back to his cell. Plaintiff was accompanied by another Correctional Officer Ogundeko. There seem to have been a verbal altercation between plaintiff and Offender Henry.

   11.  A few days later, plaintiff was informed that Offender Henry had accused him of throwing urine in his face during the verbal altercation and that plaintiff punched him three times. An investigation was conducted, and despite several witnesses stating said incident never happened, defendants decided to admit a "credible testimony" the statement of a lone Correctional Officer, a white female who stated she saw a "mean looking Nigerian" attacking Offender Henry. She further stated that she did not report the incident because other "Nigerians" told her not to.

   12.  Said Officer was later terminated for issues that reflected on her professionalism or lack thereof. Defendants' decision in terminating Plaintiff was based solely on this "credible witness" who described plaintiff simply as a "Mean looking Nigerian." Said discrimination was purposeful and reflected a deprivation of plaintiff's civil rights.

   13.  On or about July 17, 2008, plaintiff was instructed was instructed to report to the Warden's (Brenda Chaney's) office. When he got there, he was further instructed by Brenda Chaney's secretary to sign a form. Plaintiff proceeded to comply, upon further inquiry; he noticed said form was for a "Use of Force" incident that never happened. He therefore requested to have the form back and to invalidate or retract his

signature.

14. Brenda Chaney's secretary refused to give plaintiff an opportunity to retract his signature on a form he discovered was a fraudulent document which alleges a use of Force incident that never happened. Plaintiff thereby demanded to see Brenda Warden in an attempt to solve this abuse of power by her secretary. He met Brenda Chaney at the P-1 Hallway, and after he stated his case, Brenda Chaney shockingly replied "What do you want me to do about it?"

15. In his frustration, shock and disbelief, plaintiff again explained to Brenda Chaney that he had just been tricked into signing a fraudulent document and that he wished to retract his signature. Again, Brenda Chaney responded: "So what do you want me to do about it?"

16. In order to further perpetrate her fraud, Brenda Chaney and her cohorts instructed plaintiff to report to the infirmary and fill a Use of Force document which stated he saw a nurse as a result of the alleged Use of Force. (Same document referenced in #11). This fraudulent document concocted by Warden Chaney and her co-conspirators allege plaintiff came to the infirmary for medical treatment and examination on a day and time plaintiff was supposed to be attending classes.

17. Even though there was overwhelming evidence that the Offender in question was being frugal with the truth when he claimed that plaintiff threw bodily fluids at him and punched him three times, Brenda Chaney still proceeded to terminate plaintiff's

employment based on:

A: The statement of the Offender in question.

B: Statement of Officer Coppedge, who was later terminated for her unprofessional conduct and relationship with inmates, and

C: Officer Adeniji's hearsay account that he heard other officers saying there was an altercation between an inmate and a correctional officer.

18. It is important to note that among all the officers who were disciplined for the alleged Use of Force, only defendants' star witness, Officer Coppedge, a white female, did not experience any disciplinary action. In her statement, Officer Coppedge identified plaintiff as a mean looking Nigerian. She furthers stated that she did not report the alleged Use of Force because other Nigerians told her not to.

## ACTION FOR FRAUD

Defendants, Brenda Chaney, "Jane Doe" (her secretary) Todd Harris and Mary Prater represented to plaintiff that the document he was signing was for some other official business when in actuality, said document referenced a "Use of Force" that never happened. Said document also stated that plaintiff reported to the infirmary for medical treatment and report for the fictitious Use of Force.

20.   When plaintiff discovered the fraud that had been perpetrated on him, he

demanded to have the document back so he could cancel his signature. "Jane Doe" informed him that she would not give it back to him for his intended purpose.

21. This misrepresentation was material in that it stated that plaintiff was party to a Use of Force that never happened. It was on the basis of this fictitious Use of Force that defendants terminated plaintiff's employment with the TDCJ.

22. Said misrepresentation was false in that there was no Use of Force, (Obviously this is a case of Use of Farce). Plaintiff never reported to the infirmary on the date stated on the document. Defendants knew said representation and document of the "Use of Farce" was false. Defendants made the representation with the intent that plaintiff act and rely upon it, which he did.

23. Plaintiff's reliance on defendants' "Use of Farce" document caused him significant injury, in that, based on the fraudulent and fictitious incident, plaintiff was eventually terminated from his employment with the TDCJ.

**DAMAGES**

24. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a.    Court Costs

    b.    All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    c.    Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    d.    All reasonable and necessary costs incurred in pursuit of this suit;

    e.    Emotional pain;

    f.    Inconvenience;

    g.    Interest;

    h.    Loss of enjoyment of life;

    i.    Mental anguish in the past;

    j.    Mental anguish in the future; and

    k.    Loss of earnings in the past.

## EXEMPLARY DAMAGES

25.    Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff.  In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Olugbenga Adeyemi, respectfully prays that the Defendant be cited to appear and answer herein, and that

upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By:_____/s/_____
John-Baptist Sekumade
Attorney-in-Charge
Texas Bar No. 24051589
Southern District Bar No:   620585
NAACP Houston Branch
2002 Wheeler Avenue
Houston, Texas   77004
Tel. (713) 409-5970
Fax. (713) 360-2699
Attorney for Plaintiff
Olugbenga Adeyemi